IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LAURIE BROWN, OLUWAKEMI
FOSUDO, and ABIGAIL MUSICK,

                    Plaintiffs,          Case No. 5:24-cv-05144-TLB

v.

WALMART, INC.,

          Defendant.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WALMART, INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION

# **<u>TABLE OF CONTENTS</u>**

Introduction ................................................................................................................ 1

Background ................................................................................................................. 2

Legal Standard .......................................................................................................... 7

Argument .................................................................................................................... 8

    I.     The Parties Agreed to Individually Arbitrate Any Disputes................. 8

    II.    The Arbitration Agreement Covers Plaintiffs' Dispute. ....................... 12

    III.   The Arbitration Must Proceed on an Individual Basis........................ 14

    IV.   The Court Should Stay This Action Pending Arbitration. ................... 15

Conclusion ................................................................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adelstein v. Walmart Inc.*,
No. 1:23-CV-00067, 2024 WL 1347043 (N.D. Ohio Mar. 30, 2024) ...................... 12

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ................................................................................ 13

*BDO Seidman, LLP v. SSW Holding Co.*,
2012 Ark. 1, 368 S.W.3d 361 .................................................................. 13

*Cicle v. Chase Bank USA*,
583 F.3d 549 (8th Cir. 2009) .................................................................. 15

*Coffey v. OK Foods Inc.*,
649 F. Supp. 3d 741 (W.D. Ark. 2023) ...................................................... 8

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ................................................................................ 7

*Ducharme v. Ducharme*,
316 Ark. 482, 872 S.W.2d 392 (1994) ...................................................... 9

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .............................................................................. 14

*Fischer v. Conopco*,
No. 4:21-CV-00582-SEP, 2022 WL 1802271 (E.D. Mo. June 2, 2022) .................. 12

*Foster v. Walmart, Inc.*,
15 F.4th 860 (8th Cir. 2021) ............................................................. 9, 11

*Garrett v. Tandy Corp.*,
295 F.3d 94 (1st Cir. 2002) .................................................................... 10

*GGNSC Holdings, LLC v. Lamb By and Through Williams*,
2016 Ark. 101, 487 S.W.3d 348 ................................................................ 9

*Great Am. Ins. Co. v. Russell*,
914 F.3d 1147 (8th Cir. 2019) .................................................................. 7

*Green v. Dillard's, Inc.*,
483 F.3d 533 (8th Cir. 2007) .................................................................... 9

*Green v. SuperShuttle Int'l, Inc.,*
    653 F.3d 766 (8th Cir. 2011) .................................................................... 13

*Holley v. Bitesquad.com LLC,*
    416 F. Supp. 3d 809 (E.D. Ark. 2019) ....................................................... 14

*HPD, LLC v. TETRA Techs., Inc.,*
    2012 Ark. 408, 424 S.W.3d 304.................................................... 8, 12, 13

*Hudson v. ConAgra Poultry Co.,*
    484 F.3d 496 (8th Cir. 2007) ...................................................................... 8

*In re CenturyLink Sales Pracs. & Sec. Litig.,*
    MDL No. 17-2795, 2018 WL 2122869 (D. Minn. May 8, 2018) ............................. 15

*Johnson v. Walmart Inc.,*
    57 F.4th 677 (9th Cir. 2023) ..................................................................... 12

*Kloeckner Metals Corp. v. Five Rivers Distrib., LLC,*
    635 F. Supp. 3d 697 (W.D. Ark. 2022) ........................................................ 8

*L & R Farm P'ship v. Cargill Inc.,*
    963 F. Supp. 2d 798 (W.D. Tenn. 2013)....................................................... 15

*Lee v. Ticketmaster L.L.C.,*
    817 Fed. Appx. 393 (9th Cir. June 12, 2020)............................................ 10, 11

*Mahamedi IP Law, LLP v. Paradice & Li, LLP,*
    No. 5:16-CV-02805-EJD, 2017 WL 2727874 (N.D. Cal. Feb. 14, 2017) ................ 15

*Maynez v. Walmart, Inc.,*
    479 F. Supp. 3d 890 (C.D. Cal. 2020) ................................................. 10, 11, 12

*McConico v. Wal-Mart Stores, Inc.,*
    No. 7:19-CV-1600-GMB, 2021 WL 1102416 (N.D. Ala. Mar. 23, 2021) ................. 9

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coors,*
    357 F. Supp. 2d 1277 (D. Colo. 2004) ....................................................... 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ....................................................................................... 7

*Naimoli v. Pro-Football, Inc.,*
    692 F. Supp. 3d 499 (D. Md. 2023) ............................................................. 9

*Nguyen v. Barnes & Noble Inc.,*
    763 F.3d 1171 (9th Cir. 2014) ............................................................... 9, 11

*Pleasants v. Am. Express Co.,*
   541 F.3d 853 (8th Cir. 2008) .................................................................... 15

*PRM Energy Sys., Inc. v. Primenergy, L.L.C.,*
   592 F.3d 830 (8th Cir. 2010) ...................................................................... 7

*Reid v. Doe Run Res. Corp.,*
   701 F.3d 840 (8th Cir. 2012) ...................................................................... 7

*Robinson v. EOR-ARK LLC,*
   841 F.3d 781 (8th Cir. 2016) ...................................................................... 8

*Roller v. TV Guide Online Holdings, LLC,*
   2013 Ark. 285 ............................................................................................ 11

*Seldin v. Seldin,*
   879 F.3d 269 (8th Cir. 2018) ...................................................................... 2

*Simula, Inc. v. Autoliv, Inc.,*
   175 F.3d 716 (9th Cir. 1999) .................................................................... 15

*Smith v. Spizzirri,*
   601 U.S. 472 (2024) .................................................................................. 15

*Specht v. Netscape Commc'ns Corp.,*
   306 F.3d 17 (2d Cir. 2002) ....................................................................... 11

*Whitney v. Guys, Inc.,*
   700 F.3d 1118 (8th Cir. 2012) .................................................................... 8

*Wilson v. Huuuge, Inc.,*
   351 F. Supp. 3d 1308 (W.D. Wash. 2018), *aff'd*, 944 F.3d 1212 (9th Cir. 2019) ...... 9

**Statutes**

18 U.S.C. § 2710 .......................................................................................... 1, 6

9 U.S.C. § 3 .............................................................................................. 1, 7, 15

## **Introduction**

Plaintiffs Laurie Brown, Oluwakemi Fosudo, and Abigail Musick (collectively, "Plaintiffs") filed a class action complaint in this Court despite having agreed, when they made purchases on Walmart.com, to waive their right to collective actions and to arbitrate any disputes they had with Walmart, Inc. ("Walmart"). Those purchases are the very subject of their claims here: that the titles of videos Plaintiffs bought on Walmart's website were disclosed to Facebook in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. (Doc. 2, ¶ 1). Because Plaintiffs entered a binding arbitration agreement with Walmart as part of the purchase process, this Court should stay their claims and direct Plaintiffs to proceed to individual arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.

This conclusion follows from simple and incontrovertible facts. Plaintiffs allege that their claims arise from video purchases made on Walmart.com. (Doc. 2, ¶ 3). As a condition of those transactions, however, Plaintiffs had to agree to Walmart's Terms of Use ("TOU"). *See* Declaration of Aditya Bakle ¶¶ 3–4 ("Bakle Decl."); Declaration of Anil Kumar Garikepati ¶¶ 4–8 ("Garikepati Decl."). One such term is "that all disputes arising out of or related to these terms of use or any aspect of the relationship between you and Walmart, including any products or services offered or sold by Walmart . . . will be resolved through final and binding arbitration." Declaration of Stacey Krsulic, Exhibit A § 20.1 ("Krsulic Decl."). The TOU also specify "that any arbitration required by the arbitration agreement will take place on an individual basis." *Id.* § 20.2. Plaintiffs are therefore bound to individually arbitrate their claims

1

here. This Court should therefore compel individual arbitration of Plaintiffs' claims under the agreement and stay this case while those arbitrations proceed.[1]

## Background

### 1. *Walmart's Webpage and Arbitration Agreement*

Walmart, based in Bentonville, Arkansas, is the United States' largest retailer. Bakle Decl. ¶ 2; Garikepati Decl. ¶ 2; Krsulic Decl. ¶ 2. In addition to Walmart's physical locations, Walmart also offers items for sale online at Walmart.com. Bakle Decl. ¶ 2; Garikepati Decl. ¶ 2; Krsulic Decl. ¶ 2. All purchases made on Walmart.com are governed by the TOU, agreement to which is a precondition to purchasing any goods or services from the Walmart.com website. *See* Bakle Decl. ¶¶ 3–4; Garikepati Decl. ¶¶ 4–8.

Walmart.com customers may access the TOU at any time by visiting a webpage on which they are posted. *See* Garikepati Decl. ¶ 11.[2] There are links to this page in multiple places across the Walmart.com website. *Id.* First, before customers make a purchase, the TOU are located through hyperlink at the bottom of any Walmart.com webpage. *Id.* Second, Walmart presents the TOU to the customer before the customer creates a Walmart.com account. *See* Bakle Decl. ¶¶ 3–4.

If a customer seeks to purchase an item on Walmart.com, the customer must create a Walmart.com account (there is no "Guest" checkout option on Walmart.com).

---

[1] In the alternative, Walmart requests that this Court dismiss the Complaint under Rule 12(b)(6). *See Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018) (recognizing Rule 12(b)(6) as an "appropriate means for parties seeking to compel arbitration").

[2] *Available at,* https://www.walmart.com/help/article/walmart-com-terms-of-use/3b75080af40340d6bbd596f116fae5a0.

Bakle Decl. ¶ 3. To create a Walmart.com account, customers must submit their first and last name, submit their phone number, and create a password. Bakle Decl. ¶ 3. After the customer submits this information, the customer must click a blue button that says "Continue." Bakle Decl. ¶ 3. Immediately above the blue "Continue" button, the webpage states: "By clicking Create Account, you acknowledge you have read and agreed to our Terms of Use and Privacy Policy." Bakle Decl. ¶ 4; *see* below.



By clicking Create Account, you acknowledge you have read and agreed to our Terms of Use and Privacy Policy. Message and data rates may apply. View our Mobile Alerts Terms.

Continue

The underlined phrases above are hyperlinks to the applicable TOU and Privacy Policy pages. Bakle Decl. ¶ 4.

In addition to agreeing to the TOU when creating an account, the customer must also affirm agreement to the TOU each time that the customer places an order on Walmart.com. *See* Garikepati Decl. ¶¶ 3–9. To purchase a product, the customer selects the item(s) he wishes to purchase, navigates to the "Cart," and presses a blue button that reads "Continue to checkout." *Id*. ¶ 3. On the right side of the screen, there is a blue button that reads "Place order for" followed by the amount of the item or items. *Id*. ¶ 4. Immediately below the blue "Place order" button, the webpage states, "By placing this order, you agree to our Privacy Policy and Terms of Use." *Id*.; *see* below. Again, the underlined phrases above are hyperlinks to the applicable TOU and Privacy Policy pages.

3

Each of the features above was present at the time that Plaintiffs created their accounts, *see* Garikepati Decl. ¶ 12, at the time they allege the VPPA was violated when they placed orders for videos, *see id.*, and also multiple times thereafter when those same customers placed additional orders on Walmart.com, *see* Declaration of Christopher Clancy ¶¶ 7, 11, 15 ("Clancy Decl."). Therefore, Plaintiffs affirmatively agreed to the TOU on multiple occasions.

**2. *Agreement to Arbitrate in the TOU***

At all times relevant to the claims at issue in Plaintiffs' complaint, Walmart's TOU contained an arbitration agreement that governs disputes between Walmart and its customers. Krsulic Decl. ¶¶ 3, 5–6. At the very top of the TOU the first full paragraph reads:

> IMPORTANT: THESE TERMS OF USE CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 20 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES. THIS MEANS THAT YOU AND WALMART ARE EACH GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT OR IN CLASS ACTIONS OF ANY KIND. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS LESS DISCOVERY AND APPELLATE REVIEW THAN IN COURT.

Krsulic Decl., Ex. A.

4

Section 20 of the TOU provides the agreement to arbitrate, which reads:

### 20. Disputes, Arbitration, and Applicable Law

PLEASE READ THIS SECTION CAREFULLY. IT MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.

#### 1. Arbitration Agreement.

EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, **YOU AGREE THAT ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART**, INCLUDING ANY PRODUCTS OR SERVICES OFFERED OR SOLD BY WALMART OR THE WALMART ENTITIES, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, **WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION** BEFORE A SINGLE NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY. EXCEPT AS OTHERWISE PROVIDED IN THESE TERMS OF USE, YOU AND WALMART AGREE THAT EACH IS WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. This paragraph may be referred to as the Arbitration Agreement in these Terms of Use.

Krsulic Decl., Ex. A § 20.1 (emphasis added in bold). Section 20 also provides for a

class and mass action waiver:

#### 2. Class Action and Mass Action Waiver.

YOU AND WALMART AGREE THAT ANY ARBITRATION REQUIRED BY THE ARBITRATION AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS. You and Walmart each agree to waive the right to have any dispute or claim subject to the Arbitration Agreement brought, heard, administered, resolved, or arbitrated as a class arbitration, class action, collective action, or Mass Action to the maximum extent permitted by law. "Mass Action" means a situation in which a party is represented by a law firm or other representative, or a collection of law firms or other representatives, that has initiated more than one hundred (100) arbitration Demands with common questions of law or fact against Walmart within 180 days of initiating your arbitration Demand. This paragraph may be referred to as the "Class Action and Mass Action Waiver" in these Terms of Use. Nothing in these

> Terms of Use precludes you from bringing issues to the attention of federal, state, or local government agencies and, if the applicable law allows, such agencies may seek relief against Walmart for you.

*Id.* § 20.2.

### 3. *Plaintiffs' Walmart.com Accounts and Purchases*

According to Walmart's records and Plaintiffs' allegations, each Plaintiff made purchases on Walmart.com. *See* Clancy Decl. ¶¶ 6–7, 10–11, 14–15. Plaintiff Brown alleges that she purchased video material on Walmart.com on December 23, 2022. (Doc. 2, ¶ 16). Plaintiff Musick alleges that she purchased video material on Walmart.com on December 28, 2023. (Doc. 2, ¶ 23). Both allegations are consistent with Walmart's records. Clancy Decl. ¶¶ 6, 10. Plaintiff Fosudo alleges that she purchased video material on December 2, 2024. (Doc. 2, ¶ 9). This appears to be a typographical error because Plaintiffs' complaint was filed on July 15, 2024 (more than four months *before* the purchase date alleged). Walmart's records, however, show that purchases associated with Plaintiff Fosudo's account include the purchase of a pre-recorded video item from Walmart.com on June 20, 2024. Clancy Decl. ¶ 14; Declaration of Benjamin E. Waldin ¶ 3 ("Waldin Decl.").

### 4. *The Complaint*

Plaintiffs seek individual and class relief for alleged violations of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* (Doc. 2, ¶ 1), Prayer for Relief. They allege that Walmart "knowingly disclosed Plaintiffs' and Class members' Private Viewing Information to Meta via the Meta Pixel technology because Defendant intentionally installed and programmed the Meta Pixel code on its website, knowing that such code would transmit to Meta the titles of the video materials purchased by its customers

coupled with its customers' unique identifiers (including FIDs)." (Doc. 2, ¶ 82). "Plaintiffs seek to represent a class defined as all persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material from Defendant's www.walmart.com website while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc." (Doc. 2, ¶ 71).

## <u>Legal Standard</u>

The FAA states that, upon "application of one of the parties," a case that is "referable to arbitration under an agreement in writing for such arbitration" "*shall* [be] stay[ed]" "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). "There is strong policy favoring arbitration." *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 845 (8th Cir. 2012) (citations omitted). "The Federal Arbitration Act is a congressional declaration of a liberal federal policy favoring arbitration agreements," *Great Am. Ins. Co. v. Russell*, 914 F.3d 1147, 1150 (8th Cir. 2019) (internal quotation marks and citation omitted), requiring that courts "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Indeed, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *HPD, LLC v. TETRA Techs., Inc.*, 2012 Ark. 408, at 6, 424 S.W.3d 304, 308 ("doubts about arbitrability must be resolved in favor of arbitration").

In deciding whether to compel arbitration, courts evaluate two issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute at issue. *Coffey v. OK Foods Inc.*, 649 F. Supp. 3d 741, 744 (W.D. Ark. 2023) (citing *Robinson v. EOR-ARK LLC*, 841 F.3d 781, 783–84 (8th Cir. 2016)); *HPD*, 2012 Ark. 408, at 6, 424 S.W.3d 304, 308 (same).

<u>**Argument**</u>

By purchasing products from Walmart.com, Plaintiffs agreed to the TOU, including the arbitration provision and class action waiver. Because Plaintiffs agreed to arbitrate "all disputes" with Walmart through arbitration, their claims fall within the scope of the arbitration provision of the agreement. Therefore, this Court should compel Plaintiffs to arbitrate their disputes.

## I.    The Parties Agreed to Individually Arbitrate Any Disputes.

To determine whether the parties entered into an arbitration agreement, "courts generally should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (internal quotation marks and citation omitted). Arkansas is the applicable state law here. *See* Krsulic Decl., Ex. A § 22.[3] "The essential elements for an enforceable arbitration

---

[3] Courts apply the forum state's choice of law rules and principles to determine which state's contract law governs. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1123 (8th Cir. 2012). "Arkansas applies the law of the state with the most significant relationship to the case." *Kloeckner Metals Corp. v. Five Rivers Distrib., LLC*, 635 F. Supp. 3d 697, 701 (W.D. Ark. 2022) (citing *Ducharme v. Ducharme*, 316 Ark. 482, 872 S.W.2d 392 (1994)). Arkansas law would likely apply, given that the TOU establish Arkansas as the governing law and Walmart's headquarters is in Arkansas. Regardless of whether Arkansas law applies or Plaintiffs' residences' state law applies, the analysis would not change. *See Naimoli v. Pro-Football, Inc.*, 692 F. Supp. 3d 499, 508 (D. Md. 2023)

agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation." *GGNSC Holdings, LLC v. Lamb By and Through Williams*, 2016 Ark. 101, at 7, 487 S.W.3d 348, 353 (reversing denial of motion to compel). "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed" bed-rock principles of contract law. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation marks and citation omitted); *Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021) ("Internet contracts, just like other agreements, require mutual assent between the parties."). Each of these elements are present here.

First, there is a valid contract. Plaintiffs' claims are based upon agreements between buyer and seller. The alleged purchases were between competent parties (buyer and seller), involve cognizable subject matter (the goods purchased), are supported by legal consideration, and reflect mutual agreement and mutual obligation (payment in exchange for the goods). *See Nguyen*, 763 F.3d at 1175 (recognizing that "the principles of contract" law apply to online transactions) (internal quotation marks and citation omitted); *Green v. Dillard's, Inc.*, 483 F.3d 533, 539 (8th Cir. 2007) (recognizing that "[i]n a retail setting '[e]ach time a customer takes an item off the shelf, a new contract looms.'") (citing *Garrett v. Tandy Corp.*, 295 F.3d 94, 100 (1st Cir. 2002)). Millions of these types of transactions take place every day.

---

(applying substantively similar Maryland law); *Wilson v. Huuuge, Inc.*, 351 F. Supp. 3d 1308, 1313 (W.D. Wash. 2018), *aff'd*, 944 F.3d 1212 (9th Cir. 2019) (applying substantively similar Washington law); *McConico v. Wal-Mart Stores, Inc.*, No. 7:19-CV-1600-GMB, 2021 WL 1102416, at *4 (N.D. Ala. Mar. 23, 2021) (applying substantively similar Alabama law).

Any argument that the TOU were not incorporated into Plaintiffs' purchase agreements would fail. For the reasons described below, Plaintiffs clearly agreed to the TOU when purchasing goods from Walmart.com.

Other courts have already confronted this exact fact pattern. In *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890 (C.D. Cal. 2020), for example, the court found an enforceable arbitration agreement based on Walmart's TOU when using the Walmart App, because the app "required Plaintiff to affirmatively acknowledge and agree to the TOU when she placed an order." *Id.* at 897. There, the plaintiff made an online purchase of a car seat from Walmart.com using Walmart's App. *Id*. at 893. The relevant steps of the checkout process described in *Maynez*, however, are the same regardless of whether a customer purchases using the Walmart App or a web browser. Garikepati Decl. ¶ 9. Here, as in *Maynez*, Plaintiffs were required "to affirmatively acknowledge and agree to the TOU when [they] placed an order." *Id*. at 897. Walmart obtained Plaintiffs' affirmative acknowledgement and agreement by requiring them to click on the "Place Order" button that appears immediately below the sentence "By clicking Place Order, you agree to Walmart's Updated Privacy Policy and Terms of Use." *Id*. at 895–96. The *Maynez* court held that this constituted "sufficient notice for constructive assent and created a binding arbitration agreement between the customer" and Walmart. *Id.* at 897 (internal quotation marks omitted) (quoting *Lee v. Ticketmaster L.L.C.*, 817 Fed. Appx. 393, 394 (9th Cir. June 12, 2020)). Further, the court held that "[w]hether or not Plaintiff actually saw, reviewed, or read the TOU is not relevant to the question of whether she agreed to them." *Id*. at 898.

10

With respect to establishing mutual agreement to written terms in connection with an internet purchase, the law in Arkansas and the Eighth Circuit is no different from that applied by the court in *Maynez*. Both Arkansas courts and the Eighth Circuit have looked to other federal courts of appeals for foundational principles underlying the formation of internet contracts when assessing whether a plaintiff manifested consent. *See Foster*, 15 F.4th at 864 (relying on *Nguyen* and *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002)); *Roller v. TV Guide Online Holdings, LLC*, 2013 Ark. 285, at 2 (predating *Nguyen* but relying on *Specht*, 306 F.3d 17). Both courts differentiate between situations where the user "manifest[s] his or her assent to the terms of the license agreement by clicking on an icon" (*i.e.* "clickwrap") and situations where user assent is implied by "use of the website" (*i.e.* "browsewrap"). *Roller*, 2013 Ark. 285, at 2. Here, the agreement is akin to a clickwrap agreement because the user was required to click on the Purchase button and was clearly notified that doing so indicated their agreement with the TOU.[4]

*Maynez* relied upon these same principles in concluding that customers manifest specific assent to the Walmart.com TOU when making purchases. *See Maynez*, 479 F. Supp. 3d at 897 (relying on *Nguyen*, 763 F.3d 1171, which itself relies on *Specht*, 306 F.3d 17, and *Lee*, 817 Fed. Appx. 393, which follows both). Further, the result in *Maynez* is consistent with other courts, who have also found that the Walmart.com

---

[4] *See Nguyen*, 763 F.3d at 1176 (noting that agreements, such as that on Walmart.com, "resemble[ ] a clickwrap agreement" even if the user is not required to review the full TOU before manifesting their assent to be bound by them).

TOU create an enforceable arbitration agreement.[5] This Court should reach the same result.

## II.    The Arbitration Agreement Covers Plaintiffs' Dispute.

Next, the Court must address if the "dispute fall[s] within [the] scope" of the agreement to arbitrate. *HPD*, 2012 Ark. 408, at 6, 424 S.W.3d 304, 308. Here the agreement to arbitrate governs "ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, INCLUDING ANY PRODUCTS OR SERVICES OFFERED OR SOLD BY WALMART OR THE WALMART ENTITIES, WHETHER BASED IN . . . STATUTE . . . OR ANY OTHER LEGAL THEORY." Krsulic Decl., Ex. A § 20.1. This "extends broadly" to cover disputes relating to alleged statutory violations arising out of online purchases from Walmart.com. *See Maynez*, 479 F. Supp. 3d at 898 (finding that plaintiff's state unfair competition law claims related to online and in-store purchases fell within scope of Walmart.com's arbitration agreement). Since Plaintiffs here bring statutory claims arising out of their purchases of pre-recorded videos from Walmart.com, their claims fall within the scope of the arbitration provision.

---

[5] *See, e.g., Adelstein v. Walmart Inc.*, No. 1:23-CV-00067, 2024 WL 1347043, at *4 (N.D. Ohio Mar. 30, 2024) ("Walmart's TOU was directly accessible beneath the 'Place Order' button . . . the Court finds that the TOU was reasonably communicated to Plaintiff via his January 2022 purchase"); *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (acknowledging a "pre-existing arbitration agreement that [plaintiff] accepted when he purchased tires from Walmart.com" but concluding separate, in-store purchase was not within its scope); *Fischer v. Conopco*, No. 4:21-CV-00582-SEP, 2022 WL 1802271, at *1 (E.D. Mo. June 2, 2022) (enforcing arbitration agreement in relation to purchases of Unilever products on Walmart.com).

Even if Plaintiffs were to contest whether their claims fall within the scope of the arbitration provision, the question of arbitrability of these claims is one for the arbitrator and not for this Court. "When an arbitration clause is broad and there is a dispute as to whether a matter is arbitrable, all reasonable doubt should be resolved in favor of arbitration." *BDO Seidman, LLP v. SSW Holding Co.*, 2012 Ark. 1, at 10, 368 S.W.3d 361, 368 (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986)). The Arkansas Supreme Court has found that an "arbitration provision manifests a clear and unmistakable intent to arbitrate the questions of arbitrability" when the provision "states broadly the intent to arbitrate '[a]ll claims, disputes or other controversies arising out of, or relating to,' the contract." *HPD*, 2012 Ark. 408, at 11–12, 424 S.W.3d 304, 311. This includes agreements that "incorporate[] the AAA Rules, which expressly state that the arbitrator 'shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Id. See also Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (recognizing that the AAA rules provide that "[b]y incorporating the AAA Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability").[6]

The TOU here incorporate the AAA Rules. They provide that "[a] party seeking arbitration of any dispute or claim subject to the Arbitration Agreement shall submit

---

[6] *See also* American Arbitration Association, Consumer Arbitration Rules, R-14 *available at,* https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf ("[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim").

a copy of the Demand to the American Arbitration Association ('AAA')" and that "[t]he arbitration will be administered by the AAA pursuant to the current AAA Consumer Arbitration Rules, except to the extent modified by these Terms of Use." Krsulic Decl., Ex. A § 20.4.

Because the Arbitration Agreement is worded broadly to include "all disputes arising out of" the TOU, the dispute here clearly falls within its bounds. But even if Plaintiffs were to contest that obvious point, that disagreement must be resolved by the arbitrator under the incorporated AAA rules.

## III.    The Arbitration Must Proceed on an Individual Basis.

Plaintiffs must arbitrate their claims on an individual basis. The Walmart TOU contain a class action and mass action waiver, which provides that "YOU AND WALMART AGREE THAT ANY ARBITRATION REQUIRED BY THE ARBITRATION AGREEMENT WILL TAKE PLACE ON AN INDIVIDUAL BASIS. You and Walmart each agree to waive the right to have any dispute or claim subject to the Arbitration Agreement brought, heard, administered, resolved, or arbitrated as a class arbitration, class action, collective action, or Mass Action to the maximum extent permitted by law." Krsulic Decl., Ex. A § 20.2. "The Supreme Court has upheld the validity of class-action waivers in arbitration agreements." *Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 823 (E.D. Ark. 2019) (citing *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 524–25 (2018)). And so has the Eighth Circuit. *See Cicle v. Chase Bank USA*, 583 F.3d 549, 556 (8th Cir. 2009); *Pleasants v. Am. Express Co.*,

541 F.3d 853, 859 (8th Cir. 2008). Therefore, the Court should compel each individual Plaintiff to arbitrate their dispute separately.

## IV.    The Court Should Stay This Action Pending Arbitration.

Because Plaintiffs' claims are subject to individual arbitration, the Court should stay this case. *See* 9 U.S.C. § 3 (providing that, if a suit is "referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"); *Smith v. Spizzirri,* 601 U.S. 472, 478 (2024) (holding that the FAA requires a federal district court to stay an action pending an arbitration).

Additionally, Defendant respectfully requests that the Court suspend all deadlines in this matter until the Court reaches a conclusion on the Motion to Compel Arbitration and Stay Action Pending Arbitration. *See, e.g.*, *In re CenturyLink Sales Pracs. & Sec. Litig.*, MDL No. 17-2795, 2018 WL 2122869, at *2 (D. Minn. May 8, 2018) (quoting *Mahamedi IP Law, LLP v. Paradice & Li, LLP*, No. 5:16-CV-02805-EJD, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) ("'Courts routinely grant stays' pending the determination of a motion to compel arbitration, because 'unless discovery is stayed, [the movant] will forever lose the advantages of arbitration—speed and economy.'"); *L & R Farm P'ship v. Cargill Inc.*, 963 F. Supp. 2d 798, 802 (W.D. Tenn. 2013) (citing 9 U.S.C. § 3; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coors*, 357 F. Supp. 2d

1277, 1281 (D. Colo. 2004)) ("Generally, proceedings are stayed after a proper motion to compel arbitration is filed.").[7]

## Conclusion

Plaintiffs agreed to arbitrate all disputes they had with Walmart in consumer arbitration before the AAA. This agreement was valid and binding, because Plaintiffs expressly agreed to it when setting up a Walmart.com account and again when placing orders on Walmart.com. Multiple courts have evaluated that same consumer agreement and reached the same conclusion that it is binding and enforceable. Because the agreement to arbitrate is broad and because it expressly contemplates statutory causes of action connected to Walmart.com purchases, the claims here fall within its scope.

Therefore, this Court should grant Walmart's Motion to Compel Arbitration and Stay Action Pending Arbitration.


Dated: October 7, 2024                    Respectfully Submitted,

                                          RYAN J. WALSH (admitted *pro hac vice*)
                                          Wis. State Bar No. 1091821
                                          EIMER STAHL LLP
                                          10 East Doty Street
                                          Suite 621
                                          Madison, WI 53703
                                          Tel: (608) 620-8346
                                          Fax: (312) 692-1718
                                          rwalsh@eimerstahl.com

---

[7] Should this Court deny Walmart's relief requested herein, it requests the Court provide it with a reasonable period of time following any such ruling to answer or to move under Rule 12 to dismiss the claims on alternative bases.

16

BENJAMIN E. WALDIN (admitted *pro hac vice*)
Ill. State. Bar No. 6317991
JORDAN V. HILL (admitted *pro hac vice*)
Ill. State Bar No. 6340800
EIMER STAHL LLP
224 South Michigan Ave.
Suite 1100
Chicago, IL 60604
Tel: (312) 660-7600
Fax: (312) 692-1718
bwaldin@eimerstahl.com
jhill@eimerstahl.com

KAREN P. FREEMAN
Ark. No. 2009094
COLT D. GALLOWAY
Ark. No. 2016212
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive
Suite 200
Rogers, Arkansas 72758
Tel: (479) 464-5682
Fax: (479) 878-6928
kfreeman@mwlaw.com
cgalloway@mwlaw.com

*Counsel for Defendant Walmart, Inc.*

17