**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| LAURIE BROWN; OLUWAKEMI FOSUDO; and ABIGAIL MUSICK, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>WALMART, INC.,<br><br>        Defendant. | Civil Action No. 5:24-cv-05144-TLB<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION** |

Plaintiffs Laurie Brown, Oluwakemi Fosudo, and Abigail Musick submit this response in opposition to the motion to compel arbitration and stay action (ECF Nos. 25-26 (the "Motion" or "Mot.")) filed by Defendant Walmart, Inc.

## INTRODUCTION

In this putative consumer class action, Plaintiffs allege that Defendant knowingly disclosed their personally identifying and video purchase-related information to Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc. ("Facebook"), in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Defendant has responded to the Complaint by moving to compel each of the Plaintiffs' individual claims to arbitration pursuant to an arbitration agreement found in the Walmart.com Terms of Use (ECF No. 26-5 (the "TOU")).

The Motion should be denied because the TOU expressly exempt Plaintiffs' VPPA claims from the arbitration agreement. The plain language of the TOU provides that the arbitration agreement does not apply to any "disputes that qualify for small claims court[.]" (TOU, at 14.[1]) Because each of the Plaintiffs' VPPA claims seeks $2,500 in statutory damages, each of the claims is a dispute that "qualif[ies] for small claims court" under applicable Arkansas law and is therefore exempt from the arbitration agreement.

Plaintiffs' claims are exempt from the arbitration agreement, and the Motion should be denied.

---

[1]     ECF pagination throughout.

# BACKGROUND

## I. Procedural History

On July 15, 2024, Plaintiffs initiated this action by filing a Class Action Complaint, each alleging a single claim for violation of the VPPA against Defendant and seeking the statutorily authorized $2,500 in damages as relief. (ECF No. 1.)

On October 7, 2024, Defendant filed the Motion, requesting that the Court compel Plaintiffs to "individually arbitrate" their claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, and to stay the action pending the arbitration. (ECF No. 25 at 2.) Alternatively, the Motion requests that the Court dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See id.*) The Motion is accompanied by the declarations (and accompanying exhibits) of Defendant's employees Aditya Bakle, Anil Kumar Garikepati, Stacey Krsulic, and Christopher Clancy, and of its counsel Benjamin E. Waldin. (ECF Nos. 26-1 through 26-8.)

## II. The Video Privacy Protection Act

Generally speaking, the VPPA prohibits "a video tape service provider" – defined as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4) – from "knowingly disclos[ing], to any person, personally identifiable information" – "includ[ing] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider," 18 U.S.C. § 2710(a)(3) – "concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1).

Leading up to the VPPA's enactment in 1988, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988). Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials because such records offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more

2

subtle and pervasive form of surveillance." *Id.* (statements of Sens. Simon and Leahy, respectively).

Thus, in proposing the Video and Library Privacy Protection Act (which later became the VPPA), Senator Patrick J. Leahy (the senior Senator from Vermont from 1975 to 2023) sought to codify, as a matter of law, that "our right to privacy protects the choice of movies that we watch with our family in our own homes." 134 Cong. Rec. S5399 (May 10, 1988). As Senator Leahy explained at the time, it is the personal nature of such information, and the need to protect it from disclosure, that is the *raison d'être* of the statute: "These activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.* at 35.

While these statements rang true in 1988 when the act was passed, the importance of legislation like the VPPA in the modern era of data mining is more pronounced than ever before. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information." *The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century*, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law, http://www.judiciary.senate.gov/meetings/the-video-privacy-protection-act-protecting-viewer-privacy-in-the21stcentury.

But former Senator Al Franken may have said it best: "If someone wants to share what they watch, I want them to be able to do so . . . But I want to make sure that consumers have the right to easily control who finds out what they watch—and who doesn't. The Video Privacy Protection Act guarantees them that right." *Chairman Franken Holds Hearing on Updated Video Privacy Law for 21st Century*, frank.senate.gov (Jan. 31, 2012).

3

### III. Factual Allegations of the Complaint

The Complaint alleges that Defendant deprived Plaintiffs and numerous others of their right to privacy in the videos they purchase by systematically (and surreptitiously) disclosing their Private Viewing Information (information that reveals the specific videos that a particular person purchased on Defendant's website) to Meta, without providing notice to (let alone obtaining consent from) any of them. (Compl. ¶ 37.)

Specifically, the Complaint alleges that, over the past two years, Defendant has systematically transmitted (and continues to transmit today) its customers' personally identifying video viewing information to Meta using a snippet of programming code called the "Meta Pixel," which Defendant chose to install on its walmart.com website. (*Id.* ¶ 2.) "The information Defendant disclosed (and continues to disclose) to Meta via the Meta Pixel it installed on its website includes the Facebook ID ("FID") and the title of the specific prerecorded video material that each of its customers purchased on its website." (*Id.* ¶ 3.) "An FID is a unique sequence of numbers linked to a specific Meta profile." (*Id.*) "A Meta profile, in turn, publicly identifies by name the specific person to whom the profile belongs (and also contains other personally identifying information about the person)." (*Id.*) "Thus, the FID identifies a person more precisely than a name, as numerous persons may share the same name, but each person's Facebook profile (and associated FID) uniquely identifies one and only one person." (*Id.*) "Defendant disclosed and continues to disclose its customers' Private Viewing Information to Meta without asking for, let alone obtaining, their consent to these practices." (*Id.*)

The VPPA clearly prohibits what Defendant has done. Subsection (b)(1) of the VPPA provides that, absent the consumer's prior informed, written consent, any "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for," 18 U.S.C. § 2710(b)(1), damages of $2,500.00, *see id.* § 2710(c). Accordingly, Plaintiffs each allege a claim against Defendant for intentionally and unlawfully disclosing their Personal Viewing Information to Meta in violation of the VPPA, and each seeks to recover damages of $2,500. (Comp. ¶¶ 6, 85.)

**APPLICABLE LEGAL STANDARD**

Although there is a strong and "liberal federal policy favoring arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625 (1985), because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Rather, a court "should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287 (2010) (emphasis in original). Thus, whether a dispute is arbitrable comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Nat'l Union Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir. 1996).[2]

The interpretation of an arbitration agreement is a matter of state law. *See Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 629-30 (2009); *Perry v. Thomas,* 482 U.S. 483, 493, n. 9 (1987).

**ARGUMENT**

Defendant moves to compel each of the Plaintiffs to arbitrate their VPPA claim on an individual basis pursuant to section 20 of the version of the walmart.com TOU attached as Exhibit A to the Krsulic Declaration.[3] Although Plaintiffs do not dispute that they agreed to the version of

---

[2] "Section 3 of the [FAA] entitles litigants in federal court to a stay of any action that is 'referable to arbitration under an agreement in writing,'" and Plaintiffs hereby demand a stay in the unlikely event the Motion is granted. *See Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 625 (2009) (quoting 9 U.S.C. § 3).

[3] A copy of the TOU currently accessible on Defendant's walmart.com website is attached as Exhibit A (ECF No. 26-5) to the declaration of Stacey Krsulic (ECF No. 26-4 (the "Krsulic Declaration" or "Krsulic Decl.")). According to the Krsulic Declaration, the arbitration agreement found in the version of the TOU attached as Exhibit A to her declaration is the same arbitration agreement that was found in the versions of the TOU in effect when each of the Plaintiffs purchased prerecorded video products on Defendant's walmart.com website. *See* Krsulic Decl. ¶ 6 (stating that, "[a]t all times relevant to the claims at issue in the Complaint," the TOU in effect on walmart.com contained the same language found in section 20 of the version of the TOU attached to the Krsulic Declaration). And indeed, publicly accessible, archived copies of the

the TOU attached as Exhibit A to the Krsulic Declaration in the course of purchasing prerecorded video products on walmart.com, the plain language of the TOU expressly exempts each of their individual VPPA claims – the only disputes at issue in the Motion[4] – from the arbitration agreement.

At all relevant times, section 20(1) of the TOU has stated, in its entirety, as follows:

> 1. **Arbitration Agreement.**
>
> ***EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT***, YOU AGREE THAT ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND WALMART, INCLUDING ANY PRODUCTS OR SERVICES OFFERED OR SOLD BY WALMART OR THE WALMART ENTITIES, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISREPRESENTATION, OR ANY OTHER LEGAL THEORY, WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A SINGLE NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY. EXCEPT AS OTHERWISE PROVIDED IN THESE TERMS OF USE, YOU AND WALMART AGREE THAT EACH IS WAIVING THE RIGHT TO SUE IN COURT AND TO HAVE A TRIAL BY A JURY. This paragraph may be referred to as the Arbitration Agreement in these Terms of Use.

(ECF No. 26-5 at 14, Krsulic Decl., Ex. A at 13 (emphasis added).)[5]

---

versions of Defendant's TOU in effect on walmart.com during the applicable two-year statutory period (i.e., from July 15, 2022 through July 15, 2024) confirm that the arbitration agreement found in the TOU accessible on walmart.com throughout that period of time contained the same or materially the same language as the arbitration agreement found in the version of the TOU attached as Exhibit A to the Krsulic Declaration. *See, e.g.,* The Wayback Machine Internet Archive, "Walmart.com Terms of Use," version "Last Updated January 6, 2023," accessible at https://web.archive.org/web/20230201101542/https://www.walmart.com/help/article/walmart-com-terms-of-use/3b75080af40340d6bbd596f116fae5a0.

[4] The Motion makes clear that Defendant is moving to compel individual arbitration of each Plaintiff's individual VPPA claim, for which each Plaintiff seeks damages of $2,500. *See, e.g.*, Mot. at 19 ("Plaintiffs must arbitrate their claims on an individual basis."); *id.* at 20 ("[T]he Court should compel each individual Plaintiff to arbitrate their dispute separately."); *id.* at 12 ("Since Plaintiffs here bring statutory claims arising out of their purchases of pre-recorded videos from Walmart.com, their claims fall within the scope of the arbitration provision."). Thus, in deciding the Motion, the question is whether Plaintiffs' individual claims for violation of the VPPA are exempt from the arbitration agreement in the TOU.

[5] Importantly, the excerpt of section 20(1) of the TOU quoted in the Krsulic Declaration (ECF No. 26-4 at 2; Krsulic Decl. ¶ 6) is incomplete and omits the opening phrase of the section ("EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT") – which, as discussed, is a material part of section 20(1) for purposes of deciding the Motion.

Plaintiffs cannot be compelled to arbitrate their claims because, as the portion of section 20(1) of the TOU emphasized above plainly states, any dispute that "qualif[ies] for small claims court" is exempt from the arbitration agreement, and because each of the Plaintiffs' VPPA claims so qualifies. *See C. & A. Const. Co. v. Benning Const. Co.*, 256 Ark. 621, 622 (1974) ("When contracting parties express their intention in a written instrument in clear and unambiguous language, it is our duty to construe the written agreement according to the plain meaning of the language employed."). Indeed, in Arkansas, claims seeking damages of $5,000 or less fall within the subject-matter jurisdiction of the state's small claims courts. *See, e.g.,* Ark. Sup. Ct. R. Admin. Order 18 ¶¶ 3-4; *see also* City of Bentonville, "Small Claims Court in Arkansas," https://www.bentonvillear.com/DocumentCenter/View/1064/Small-Claims-Handout?bidId= ("In Small Claims Court, you can sue to recover for damages to personal property, money owed, or for delivery of personal property which is worth $5,000 or less. . . . If you sue for money damages, the maximum amount you may claim is $5,000. . . . You can file a lawsuit in the county in which a defendant currently resides[.]"). Because each of the Plaintiffs seeks monetary damages in the statutorily set sum of $2,500 from Defendant for disclosing his or her Private Viewing Information to Meta in violation of the VPPA (Compl. ¶ 85), the VPPA claim alleged by each of the Plaintiffs is a dispute that falls within the jurisdiction of, and thus "qualifies for" (ECF No. 26-5 at 14), small claims court in Arkansas. (*See* Ark. Sup. Ct. R. Admin. Order 18 ¶¶ 3-4.) Accordingly, each of the Plaintiffs' individual claims against Defendant for violation of the VPPA, the sole focus of the Motion, is expressly exempt from the TOU's arbitration agreement. (ECF No. 26-5 at 14, Krsulic Decl., Ex. A at 13 ("Except for disputes that qualify for small claims court . . . .").)

The district court's decision denying the defendant's motion to compel arbitration in *Horton v. Dow Jones & Company, Inc.* confirms that Plaintiffs cannot be compelled to arbitrate their individual VPPA claims here. There, like here, the plaintiff – after having assented to the terms and conditions of the defendant's website, which contained an arbitration agreement – brought a putative class action against the defendant for violation of a consumer-protection statute that provided for statutory damages of $5,000. The arbitration agreement there, like the one here,

expressly exempted any claims that "qualify for small claims court" from its scope. *See Horton v. Dow Jones & Co., Inc.*, No. 18-cv- 4027, 2019 WL 952314, at *3 (S.D.N.Y. Feb. 27, 2019) ("Here, the Arbitration Clause states that '<u>except for</u> . . . claims related to intellectual property and <u>disputes that qualify for small claims court</u>, any controversy or claim arising out of or relating to this Agreement or any aspect of the relationship between us . . . will be resolved by arbitration.'") (emphasis added). Noting that "[t]his language expressly exempts 'disputes that qualify for small claims court' from arbitration," the district court found that, "[u]nder New York law, Plaintiff's individual VRPA claim qualifies for small claims court because he does not seek damages in excess of $5,000, and Defendant maintains an office in New York." *Horton*, No. 18-cv- 4027, 2019 WL 952314, at *3. And because the plaintiff's claim qualified for small claims court, the district court concluded that his "claim falls outside the scope of the Arbitration Clause" and accordingly denied the defendant's motion to compel arbitration. *See id.* This Court should adopt the reasoning of the directly on-point decision in *Horton* and reach the same result here.[6]

---

[6] Although the court in *Horton* denied the defendant's motion to compel arbitration, the court nonetheless dismissed the plaintiff's complaint for lack of subject-matter jurisdiction on the ground that the plaintiff had also agreed to a provision waiving his right to bring a class action in court. *See Horton*, 2019 WL 952314, at *2. Notably, however, the class-action waiver provision in *Horton* – "[c]lass arbitrations and class actions are not permitted and, by entering into this Agreement, you are giving up the ability to participate in a class action" – applied to any and all disputes between the parties, including disputes not covered by the accompanying arbitration agreement. *See id.* at 2; *Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81 (2d Cir. 2020) (affirming district court's dismissal of complaint, holding that "the plain meaning of the class-waiver provision bars Horton from proceeding on a class basis," because "the provision bars both 'class arbitrations and class actions,'" and because the statement that "'you are giving up the ability to participate in a class action,'" is "best read as applying to both litigation and arbitration"). In this case, by contrast, the applicability of the TOU's provisions barring class actions (found in subsection 2 of section 20) is expressly limited to claims that are subject to the TOU's arbitration agreement:

> 2. **Class Action and Mass Action Waiver.**
>
> YOU AND WALMART AGREE THAT **<u>ANY ARBITRATION REQUIRED BY THE ARBITRATION AGREEMENT</u>** WILL TAKE PLACE ON AN INDIVIDUAL BASIS. You and Walmart each agree to waive the right to have **<u>any dispute or claim subject to the Arbitration Agreement</u>** brought, heard, administered, resolved, or arbitrated as a class arbitration, class action, collective action, or Mass Action to the maximum extent permitted by law. "Mass Action" means a situation in which a party is represented by a law firm or other representative, or a collection of law firms or other representatives, that has initiated more than one hundred (100) arbitration Demands with common questions of law or fact

Finally, Defendant argues that "[e]ven if Plaintiffs were to contest whether their claims fall within the scope of the arbitration provision, the question of arbitrability of these claims is one for the arbitrator and not for this Court." (Mot. at 13.) The argument is without merit. Whether the parties have agreed to submit a particular dispute to arbitration, i.e., the "question of arbitrability," is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of America,* 475 U.S. 643, 649 (1986); *see also Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002) (generally speaking, the question "whether an arbitration clause . . . applies to a particular type of controversy is for the court"); *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006) (noting "the general presumption . . . that the issue of arbitrability should be resolved by the courts"). In this case, the TOU provide that any and all "disputes that qualify for small claims court" – the opening phrase of section 20(1) – are expressly exempt from the full scope of the arbitration agreement that follows. (*See* ECF No. 26-5 at 14, Krsulic Decl., Ex. A at 13 ("**Except for disputes that qualify for small claims court** . . . .") (emphasis added).) Thus, in order for the arbitration agreement that follows the exemption to have any potential applicability, to any issues in the case, the underlying dispute must be found not to qualify for small claims court – a threshold determination that a court, not an arbitrator, must make. And because each of the disputes at issue in this case – Plaintiffs' individual claims for violation of the VPPA – plainly "qualif[ies] for small claims court," as discussed above, the arbitration agreement found in section 20(1) is totally inapplicable to any issue or question in the case, including the question of arbitrability.

---

  against Walmart within 180 days of initiating your arbitration Demand. This paragraph may be referred to as the "Class Action and Mass Action Waiver" in these Terms of Use. Nothing in these Terms of Use precludes you from bringing issues to the attention of federal, state, or local government agencies and, if the applicable law allows, such agencies may seek relief against Walmart for you.

(ECF No. 26-5 at 14, Krsulic Decl., Ex. A at 13 (emphasis added).) Thus, because none of the VPPA claims alleged by Plaintiffs in this case is a "dispute or claim subject to the Arbitration Agreement," as discussed above, none of the claims alleged by Plaintiffs are subject to the class-action waiver provision found in section 20(2) of the TOU.

Because Plaintiffs' claims are expressly exempt from the TOU's arbitration agreement, Plaintiffs cannot be compelled to arbitrate. The Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: October 31, 2024

Respectfully submitted,

/s/ Frank S. Hedin
Frank S. Hedin

Frank S. Hedin*
Arun G. Ravindran*
Elliot O. Jackson*
HEDIN LLP
1395 Brickell Ave., Ste 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
fhedin@hedinllp.com
eravindran@hedinllp.com
ejackson@hedinllp.com

and

H. Gregory Campbell (AR #92001)
Campbell Law Firm, P.A.
2100 Riverdale Road, Suite 200B
Little Rock, AR 72202
(501) 372-5659
greg@gcampbell-law.com

* Admitted *Pro Hac Vice*

*Counsel for Plaintiffs and Putative Class*