# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LAURIE BROWN, OLUWAKEMI
FOSUDO, and ABIGAIL MUSICK,

            Plaintiffs,                  Case No.  5:24-cv-05144-TLB

v.

WALMART, INC.,

            Defendant.

## DEFENDANT'S SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' MOTION TO REOPEN CASE

Defendant Walmart, Inc., ("Defendant"), by their attorneys, respectfully submits this Supplemental Authority, *O'Dell v. Aya Healthcare Services, Inc.*, No. 25-1528, 2026 WL 889141 (9th Cir. Apr. 1, 2026), attached as Exhibit A in Support of its Opposition to Plaintiffs' Motion to Reopen the Case ("Motion").

On April 1, 2026, the Ninth Circuit Court of Appeals issued an opinion in *O'Dell v. Aya Healthcare Services, Inc.*, that directly relates to Plaintiff's Motion.  In *O'Dell*, former employees of a travel-nursing agency brought a putative class action against the agency for purported wage violations.  Ex. A at 1.  Each employee had entered into an arbitration agreement with the agency, and the agreement contained a clause that an arbitrator would determine the arbitrability of the agreement.  *Id.* The district court sent four of the disputes to separate arbitrations; two found that the agreements were valid, two did not.  *Id.*  The district court, relying on the two

arbital awards that invalidated the agreements, precluded the arbitration of disputes with respect to the remaining 255 employees.  *Id.*

The Ninth Circuit reversed the district court's judgment as erroneous, holding that the FAA prohibits applying "non-mutual offensive collateral estoppel that would result in the effective invalidation of arbitration agreements."  *Id.*  Explaining that the "hallmark of the FAA is the enforcement of arbitration agreements and the resolution of disputes in individualized, one-on-one proceedings," the Court described the district court's ruling as "anathema to the FAA."  *Id.*  The Court clarified further that courts cannot do away with bilaterial proceedings between mutually consenting parties just because "*other* arbitrators in *other* proceedings involving *other* parties have already decided the issue."  *Id.*  Doing so "transforms parties' individualized proceedings into a bellwether type class action proceeding to which the parties never agreed" which is prohibited by the FAA.  *Id.*  The Court therefore reversed the district court's judgment and remanded for further proceedings.  *Id.*

Dated: April 13, 2026                              Respectfully Submitted,

RYAN J. WALSH (admitted *pro hac vice*)
Wis. State Bar No. 1091821
EIMER STAHL LLP
2 East Mifflin Street
Suite 703
Madison, WI 53703
Tel: (608) 620-8346
Fax: (312) 692-1718
rwalsh@eimerstahl.com

BENJAMIN E. WALDIN (admitted *pro hac vice*)
Ill. State. Bar No. 6317991

EIMER STAHL LLP
224 South Michigan Ave.
Suite 1100
Chicago, IL 60604
Tel: (312) 660-7600
Fax: (312) 692-1718
bwaldin@eimerstahl.com

COLLIN J. VIERRA (admitted *pro hac vice*)
CA. State. Bar No. 322720
EIMER STAHL LLP
1999 South Bascom Avenue, Suite 1025
Campbell, CA 95008
Tel: (408) 889-1668
Fax: (312) 692-1718
cvierra@eimerstahl.com

KAREN P. FREEMAN
Ark. No. 2009094
COLT D. GALLOWAY
Ark. No. 2016212
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive
Suite 200
Rogers, Arkansas 72758
Tel: (479) 464-5682
Fax: (479) 878-6928
kfreeman@mwlaw.com
cgalloway@mwlaw.com

*Counsel for Defendant Walmart, Inc.*

# Exhibit A

O'Dell v. Aya Healthcare Services, Inc., --- F.4th ---- (2026)
2026 WL 889141

2026 WL 889141
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

Laura O'DELL; Holly Zimmerman; Lauren Miller, individually and on behalf of all others similarly situated, Plaintiffs - Appellees,

v.

AYA HEALTHCARE SERVICES, INC., Defendant - Appellant.

No. 25-1528
|
Argued and Submitted February 13, 2026 Pasadena, California
|
Filed April 1, 2026

**Synopsis**
**Background:** Four former employees of a travel-nursing agency brought a putative class action against agency concerning wage-related claims. Agency successfully moved to compel arbitration. Two arbitrators found that mandatory-arbitration agreements at issue were valid, but the two other arbitrators found that the agreements were invalid. The district court confirmed three of the four awards, but declined to confirm the fourth award, which upheld the arbitration agreement, since agency apparently had failed to pay arbitration fees. Agency then moved to compel arbitration of claims that then had been asserted by additional plaintiffs, who had opted-in to the case pursuant to collective-action procedure available under the Fair Labor Standards Act (FLSA). After the judge who was newly assigned to the case sua sponte raised the issue of collateral estoppel, briefing was given on that issue, and the United States District Court for the Southern District of California, Cathy Ann Bencivengo, J., 2025 WL 732086, applied the doctrine of non-mutual offensive collateral estoppel to deny the motion to compel arbitration. Agency appealed.

**[Holding:]** The Court of Appeals, Tung, J., held that as a matter of apparent first impression, the Federal Arbitration Act (FAA) does not permit the application of non-mutual offensive collateral estoppel that would result in the effective invalidation of arbitration agreements.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion to Compel Arbitration.

West Headnotes (3)

**[1]**   **Alternative Dispute Resolution** 🔑 Conclusiveness of Adjudication

Federal Arbitration Act (FAA) does not permit the application of non-mutual offensive collateral estoppel that would result in the effective invalidation of arbitration agreements. 9 U.S.C.A. §§ 2, 3, 4, 10, 13.

**[2]**   **Alternative Dispute Resolution** 🔑 Right to Enforcement and Defenses in General

Federal Arbitration Act (FAA) requires courts to enforce arbitration agreements as written. 9 U.S.C.A. § 2.

**[3]**   **Alternative Dispute Resolution** 🔑 Validity

Federal Arbitration Act (FAA) recognizes generally applicable contract defenses, such as fraud, duress, or unconscionability as grounds for revocation. 9 U.S.C.A. § 2.

Appeal from the United States District Court for the Southern District of California, Cathy Ann Bencivengo, District Judge, Presiding, D.C. No. 3:22-cv-01151-CAB-MMP

**Attorneys and Law Firms**

Yasmin Zainulbhai (argued), Alexander T. Ricke, George A. Hanson, and J. Austin Moore, Stueve Siegel Hanson LLP, Kansas City, Missouri; Jason S. Hartley, Hartley LLP, San Diego, California; for Plaintiffs-Appellees.

Paul W. Hughes III (argued), Sarah P. Hogarth, Grace Wallack, and Mary H. Schnoor, McDermott Will & Schulte

LLP, Washington, D.C.; Kendra S. Canape, Gordon Rees Scully Mansukhani LLP, Irvine, California; Kevin Allen, Robinson Markevitch & Parker LLP, Los Gatos, California; Paul Gamboa and Julia L. Koechley, Gordon Rees Scully Mansukhani LLP, Chicago, Illinois; for Defendant-Appellant.

Archis A. Parasharami, Daniel E. Jones, and Carmen Longoria-Green, Mayer Brown LLP, Washington, D.C.; Jonathan D. Urick and Kevin R. Palmer, U.S. Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

Before: Richard C. Tallman, Lawrence VanDyke, and Eric C. Tung, Circuit Judges.

**OPINION**

TUNG, Circuit Judge:

This case asks whether the application of non-mutual offensive collateral estoppel to preclude the enforcement of arbitration agreements is compatible with the Federal Arbitration Act. We hold that it is not.

Former employees of a travel-nursing agency brought a putative class action against the agency for purported wage-related violations. The agency entered into arbitration agreements with each of its employees, and the agreements (all materially the same) contained a clause that required an arbitrator (not a court) to determine the validity of the arbitration agreement. Pursuant to this clause, the district court sent four of the disputes to separate arbitrations; the results came back mixed: two of the arbitrators found that the agreements were valid, but the other two arbitrators found that the agreements were invalid. Applying the doctrine of non-mutual offensive collateral estoppel, the district court picked the two arbitral awards invalidating the agreements —and not the two awards upholding the agreements—to *preclude* the arbitration of disputes with respect to 255 other employees who had separate arbitration agreements with the agency. In other words, because two arbitrators had already found the agreements to be invalid, the remaining hundreds of agreements were deemed invalid too, rendering separate arbitrations unnecessary.

 *2    [1]    The district court's approach was erroneous. A hallmark of the FAA is the enforcement of arbitration agreements and the resolution of disputes in individualized, one-on-one proceedings. Doing away with such bilateral

proceedings between mutually consenting parties, because *other* arbitrators in *other* proceedings involving *other* parties have already decided the issue, is anathema to the FAA. The district court's ruling effectively transformed the parties' individualized proceedings into a bellwether-type class action proceeding to which the parties never agreed. The FAA prohibits that transformation. In short, we hold that the FAA does not permit the application of non-mutual offensive collateral estoppel that would result in the effective invalidation of arbitration agreements.

We reverse the district court's judgment and remand for further proceedings consistent with our opinion.

**I.**

Aya Healthcare Services offers work to traveling nurses by pairing them with hospitals. The nurses and other supporting clinicians are employed by Aya, and as a condition of employment, they each sign an agreement with Aya to resolve any employment-related disputes by arbitration rather than in court. In the event a dispute arises over the validity of the arbitration agreement itself, a "delegation clause" in the arbitration agreement provides that an arbitrator (rather than a court) will decide whether the arbitration agreement is valid.

More than three years ago, four former employees of Aya (Laura O'Dell, Holly Zimmerman, Lauren Miller, and Hannah Bailey) brought a putative class action against Aya for allegedly reducing their pay mid-contract, asserting breach of contract, fraudulent inducement, state wage-and-hour violations, and violations of the Fair Labor Standards Act (FLSA). Aya moved to compel arbitration, and the district court granted Aya's motion.

Aya proceeded to arbitrate with each of the plaintiffs in four separate arbitrations. Because the plaintiffs challenged the validity of the arbitration agreements, each of the four arbitrators decided, pursuant to the delegation clause in each agreement, whether the arbitration agreements were valid. The outcomes of those arbitrations were split: Two of the arbitrators ruled that the arbitration agreements were unconscionable (reasoning that the fee and venue provisions were unduly one-sided). But the other two arbitrators ruled the opposite, concluding that the arbitration agreements were valid (reasoning that a savings clause in the agreements rescued them from any unconscionability). The parties moved the district court to confirm their respective arbitral

awards; the district court confirmed three of the four awards (concluding that the fourth award, which upheld the arbitration agreement, could not be confirmed because Aya apparently failed to pay arbitration fees).

By this point, 255 additional plaintiffs had opted-in to the case pursuant to a collective-action procedure available under the FLSA. *See* 29 U.S.C. § 216(b). Aya moved to compel each of those plaintiffs to arbitrate, pursuant to the delegation clause in each of their arbitration agreements. But rather than send these cases to arbitration (as the district court did before with the four named plaintiffs, although the case was now assigned to a different district judge), the new judge raised, *sua sponte*, the issue "of whether collateral estoppel bars [Aya] from enforcing the arbitration agreements against the Opt-in Plaintiffs." 1-ER-10. After receiving briefing on that issue, the district court denied Aya's motion to compel arbitration.

In denying the motion, the district court applied the doctrine of non-mutual offensive collateral estoppel to preclude the enforcement of the arbitration agreements between Aya and its 255 employees. [1] The district court gave collateral-estoppel effect only to the two prior arbitral awards finding the arbitration agreements to be invalid. But in doing so, the district court declined to give collateral-estoppel effect to the other arbitral awards upholding the arbitration agreements, because in the district court's view, those awards were not as "reasoned" or "thorough." 1-ER-7–8. As a result of the district court's application of the doctrine, the 255 separate arbitration agreements that Aya had entered into with its employees were rendered entirely unenforceable. Aya appealed. We have jurisdiction under 9 U.S.C. § 16(a)(1), and we review de novo the denial of a motion to compel arbitration. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1009 (9th Cir. 2005).

**II.**

**\*3** This case suggests the sort of "judicial hostility to arbitration" that the Federal Arbitration Act was enacted to prevent. *Sandler v. Modernizing Medicine, Inc.*, No. 24-6623, —— F.4th ——, ——, 2026 WL 773099, at \*2 (9th Cir. Mar. 19, 2026) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011)). "Just as judicial antagonism toward arbitration before the Arbitration Act's enactment 'manifested itself in a great variety of devices and formulas declaring arbitration against

public policy,' *Concepcion* teaches that we must be alert to new devices and formulas that would achieve much the same result today." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 509, 138 S.Ct. 1612, 200 L.Ed.2d 889 (2018) (quoting *Concepcion*, 563 U.S. at 342, 131 S.Ct. 1740).

**[2]** The district court's novel application of an equitable preclusion doctrine that dispenses with a mutuality requirement to effectively invalidate hundreds of arbitration agreements appears to be "just such a device." *Id.* The FAA "requires courts to enforce arbitration agreements as written." *Id.* at 504, 525, 138 S.Ct. 1612. And here, the arbitration agreements required "individualized arbitration." *See* 2-ER-33–72; *Epic Sys.*, 584 U.S. at 509, 138 S.Ct. 1612. By rendering those agreements unenforceable, however, the district court's approach "interferes" with that "fundamental attribute[ ] of arbitration" and thus runs counter to the FAA's instruction of enforcement. *Concepcion*, 563 U.S. at 344, 131 S.Ct. 1740; *see also Epic Sys.*, 584 U.S. at 508, 138 S.Ct. 1612.

**[3]** The text of the FAA makes all this plain. Section 2 of the FAA requires that a contract subject to the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." 9 U.S.C. § 2. The command under section 2 is apparent: the contracts "shall" be enforceable absent grounds for "revocation." (The "grounds" for invalidation pursuant to "chapter 4" are not relevant here.) Section 2 recognizes "generally applicable *contract defenses*, such as fraud, duress, or unconscionability" as grounds for revocation. *Epic Systems*, 584 U.S. at 507, 138 S.Ct. 1612 (emphasis added) (quoting *Concepcion*, 563 U.S. at 339, 131 S.Ct. 1740). No such grounds exist here. An equitable issue-preclusion doctrine (of the offensive non-mutual variety) is *not* a "generally applicable *contract defense.*" Whether or not a case implicates the enforceability of contracts, the doctrine of issue preclusion may serve to give certain judgments preclusive effect to avoid relitigation of the same issues. In other words, the doctrine is not about contracts or contract defenses.

Nor can the application of non-mutual offensive issue preclusion result in a contract "revocation" as that term is understood. *See Revocation*, Black's Law Dictionary (2d ed. 1910) (defining "revocation" as "[t]he recall of some power, authority, or thing granted, or a destroying or making void of some deed that had existence until the act of revocation made it void."); *Epic Sys.*, 584 U.S. at 507–08, 138 S.Ct. 1612;

*Concepcion*, 563 U.S. at 354–55, 131 S.Ct. 1740 (Thomas, J., concurring). Non-mutual offensive issue preclusion thus falls outside the category of "revocation" that includes "fraud, duress, and unconscionability"; it does not pertain to a deficiency with respect to the formation of contracts (or contracts generally) that might result in "revocation." *See Epic Sys.*, 584 U.S. at 507–08, 138 S.Ct. 1612; *Concepcion*, 563 U.S. at 354–55, 131 S.Ct. 1740 (Thomas, J., concurring). And to the extent that "revocation" broadly encompasses the indirect but *effective* invalidation of the agreement through preclusion, *cf. Concepcion*, 563 U.S. at 354–55, 131 S.Ct. 1740 (Thomas, J., concurring), the doctrine of preclusion as applied here would contravene critical features of the FAA, *infra* at –––– – ––––.

**\*4** Context reinforces the conclusion that the doctrine cannot be invoked to avoid enforcement of an arbitration agreement. Surrounding provisions make clear that arbitration agreements are to be enforced "in accordance with [their] terms," and the application of non-mutual offensive collateral estoppel provides no exception to that mandate. *See* 9 U.S.C. § 3 (requiring a stay in district court upon a party's application "until such arbitration *has been had in accordance with the terms of the agreement*" (emphasis added)); 9 U.S.C. § 4 (authorizing a party "aggrieved by" the "refusal of another to arbitrate" to petition a federal district court, and providing that "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties *to proceed to arbitration in accordance with the terms of the agreement*" (emphasis added)); *see also* 9 U.S.C. § 10 (authorizing vacatur of an arbitral award where the award "was procured by corruption, fraud, or undue means" among other grounds that evince a defect in the arbitral process).

These provisions envision (1) that the arbitration agreements be enforced according to their terms (absent any general contract defense, which again the doctrine of non-mutual offensive issue preclusion is not); (2) that the arbitration "*proceed*" without interference; and (3) that the arbitral award be confirmed by a court unless the fairness of the proceeding was compromised by fraud, corruption, or other similar grounds (which preclusion does not implicate).

The point is this: nowhere in this scheme—from the beginning of arbitration to its end—did Congress contemplate that a non-mutual preclusion doctrine could be deployed to frustrate an arbitration that the parties had agreed to undertake in resolving their disputes.

The application of non-mutual offensive issue preclusion would also violate the principle of consent that the FAA incorporates. The FAA reflects "the basic precept that arbitration 'is a matter of consent, not coercion.' " *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Put another way, "[c]onsent is essential under the FAA because arbitrators ... derive their 'powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.' " *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184, 139 S.Ct. 1407, 203 L.Ed.2d 636 (2019) (quoting *Stolt-Nielsen*, 559 U.S. at 682, 130 S.Ct. 1758). Precluding an arbitration that the parties had agreed to—because a *different* arbitrator in a *different* proceeding had concluded that an agreement between *different* parties was unconscionable—would render the parties consent meaningless.

The doctrine's application to deny enforcement of an arbitration agreement is incorrect for another related reason. The ruling here effectively transformed individualized arbitral proceedings into something akin to a bellwether class action to which the parties never agreed. On the basis of only two arbitral awards finding the arbitration agreements to be invalid, the district court's ruling foreclosed hundreds of arbitral proceedings from taking place after effectively invalidating the hundreds of separate arbitration agreements that Aya entered into with its employees. This approach contravenes several Supreme Court decisions that have held that imposing a class action (without the parties' consent and where the parties had agreed to individually arbitrate) is a violation of the FAA; such an imposition openly (and improperly) "interferes with fundamental attributes of arbitration." *Concepcion*, 563 U.S. at 344, 131 S.Ct. 1740; *see Epic Sys.*, 584 U.S. at 507–08, 138 S.Ct. 1612; *Stolt-Nielsen*, 559 U.S. at 684, 130 S.Ct. 1758.

In fact, the imposition here is more concerning than in those cases. At least in class proceedings, there is a requirement (among others) that the named plaintiffs adequately represent other members of the class. Here, there is no such requirement. The two arbitral awards in favor of the two plaintiffs who happened to go first (regardless of adequacy of representation) would preclude Aya and the hundreds of plaintiffs from arbitrating their disputes pursuant to their

agreements. Indeed, under the district court's logic, just one arbitration proceeding would be enough to preclude hundreds (or thousands) of other arbitration proceedings. That is no ordinary class action. That is a class action stripped of all its important protective features. And whereas bellwether actions are generally not binding unless the parties agree to that effect in advance, under the district court's approach, the results of one arbitration proceeding *would* be binding on the rest. In sum, its approach would supplant arbitrations with binding bellwether class actions lacking the procedural safeguards of ordinary class actions.

**\*5**  The FAA does not allow that. We are not aware of any other instance in which non-mutual offensive issue preclusion has been used to invalidate arbitration agreements. The parties have identified none. We reject this new application of preclusion doctrine as it would be "fundamentally at war" with the FAA and undermine Congress's efforts to protect arbitration from judicial opposition. *Stolt-Nielsen*, 559 U.S. at 684, 130 S.Ct. 1758.

Remarkably, plaintiffs argue that such a device is required by the text of the FAA. It is not. Plaintiffs point to language in section 13, which states that "[t]he judgment so entered [confirming an arbitral award] shall have the same force and effect, in all respects, as, and be subject to all provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which

it is entered." 9 U.S.C. § 13. That language cannot bear the weight that plaintiffs would put on it. Nor can it override the plain import of sections 2, 3, 4, and 10 of the FAA, requiring enforcement of arbitration agreements according to their terms and leaving no room for the application of non-mutual offensive collateral estoppel. Nothing in section 13 suggests otherwise; that section is a general provision that guarantees that confirmed arbitral awards can be enforced and collected on as other judgments can. To incorporate into the FAA a doctrine of non-mutuality—non-existent when the statute was enacted in 1925 and only developed by courts in the last few decades, *see Parklane*, 439 U.S. at 326, 99 S.Ct. 645—would eviscerate the FAA, which requires mutual consent. "[T]he act cannot be held to destroy itself." *Concepcion*, 563 U.S. at 343, 131 S.Ct. 1740 (citation omitted). We reaffirm that rule today.

## III.

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**All Citations**

--- F.4th ----, 2026 WL 889141

Footnotes

1    A few definitional points about the doctrine: it is "*non-mutual*" because a party *different* from the party in the original action is seeking to preclude Aya from relitigating an issue; it is "*offensive*" because that new party is using a prior award as a sword (rather than a shield) to prevail against the defendant in invalidating the arbitration agreement; and it is a doctrine of "*collateral estoppel*" or "*issue preclusion*" because the new party is seeking to avoid relitigation of supposedly the same "issue"—namely, the validity of the arbitration agreements. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326–29, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

**End of Document**                                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.